# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No: 05 CR 576 |
| | ) | |
| WILLIE PIERRE DABNEY | ) | Judge John W. Darrah |
| | ) | |

## MEMORANDUM OPINION AND ORDER

The Defendant, Willie Pierre Dabney, was indicted by a grand jury on June 21, 2005, charged as a felon-in-possession of a handgun that traveled through and affected interstate commerce, in violation of 18 U.S.C. 922 (g)(1). Dabney's jury trial commenced on December 5, 2005. On December 8, 2005, the jury found the Defendant guilty of the felon-in-possession charge. Presently before the Court is Defendant's Motion for Acquittal or, in the Alternative, for a New Trial.

## LEGAL STANDARD

Motions for judgment of acquittal should only be granted when "the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). A defendant "faces a nearly insurmountable hurdle [because courts] consider the evidence in the light most favorable to the Government, defer to the credibility determination of the jury, and overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Blassingame*, 197 F.3d 271, 284 (7th Cir.

1

1999) (*Blassingame*) (quoting *United States v. Moore*, 115 F.3d 1348, 1363 (7th Cir. 1997). Thus, in viewing the evidence in the light most favorable to the Government, if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," a defendant's motion for judgment of acquittal should be denied. *United States v. Benjamin*, 116 F.3d 1204, 1206 (7th Cir. 1997).

Federal Rule of Criminal Procedure 33 allows a trial court to grant a new trial on the motion of the defendant "if required in the interests of justice." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). A motion for a new trial is not favored and should only be granted with great caution. In order to obtain a new trial, a defendant must demonstrate that his substantial rights have been jeopardized. *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993).

## ANALYSIS

*Motion for Judgment of Acquittal on the Indictment*

Defendant Dabney's motion for acquittal is premised on a singular argument, namely that the Government's two principal witnesses, Officers Wallace and Coleman, were unbelievable. The testimony of the trial witnesses, as summarized by the Defendant, is as follows.

Officer Coleman testified that he saw an individual, who is alleged to be the Defendant, about thirty to forty yards away from him, firing a weapon. Officer Coleman chased the individual for about two blocks. Officer Coleman cut across a vacant alley until he reached a two-story, motel-like building that was located at 7617 S. Colfax in Chicago, Illinois. As he approached the suspect, Officer Coleman testified that he closed the distance between him and the suspect to less than fifteen feet. The suspect, with his back to Officer Coleman, used a key to

open a security door. Though Officer Coleman had his weapon drawn and had ordered the individual to stop, this person ignored Officer Coleman, opened the security door and climbed up to the second floor. Officer Coleman testified that he could not open the door because it was locked. It was not until this person was on the second floor that Officer Coleman had an opportunity to clearly see the suspect's face. The individual, who Officer Coleman identified as the Defendant, dropped his weapon and entered one of the apartment units, Natasha Harding's apartment. Officer Coleman testified that he and Officer Wallace entered the same apartment. Officer Coleman testified that he found the Defendant in the bedroom while hiding under the bed.

Officer Wallace testified that he heard Officer Coleman on the radio stating he was in pursuit of a suspect. Officer Wallace ran after Officer Coleman, eventually closing the distance between him and Officer Coleman to only about 10 –15 feet. Officer Wallace testified that he did not see the suspect use a key to enter the security door; nor did he see Officer Coleman with a drawn weapon when the individual went through the security door. Office Wallace testified that he climbed up the balcony with the assistance of Officer Coleman and a third officer. Officer Wallace testified that within moments of entering the apartment, Officer Wallace left to see if the suspect was behind the building. Officer Wallace testified that he had been told by a female in the apartment that the suspect had fled through a window.

After the Government rested, the Defendant called Ericka Thompson. Thompson testified she was home on December 31, 2004; and just before midnight, she went outside to smoke a cigarette. Just after midnight, she saw individuals, who she believed to be Chicago

Police Officers, pull up in cars in front of 7617 S. Colfax. She saw one of the police officers climb up to the second floor balcony. This police officer knocked on several doors on the second floor before entering the apartment of Natasha Harding.

The final witness called by the Defendant was Natasha Harding. She testified that the Defendant, Dabney, was with her the entire night. She testified that he never left the apartment prior to midnight. She further testified that when the police officers entered, Dabney was coming out of the bathroom and that he was not found in the bedroom.

The crux of the Defendant's motion is the fact that the testimony of Officers Coleman and Wallace contradict each other, as well as contradicting the testimony given by the Defendant's witnesses. In weighing allegations of inconsistent testimony and whether government witnesses were believable, this court must "defer to the credibility determination of the jury, and overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *Blassingame*, 197 F.3d at 284.

Here, as recounted by the Defendant, the record contains evidence from which the jury reasonably could find guilt beyond a reasonable doubt. As a result, Defendant's motion for a judgment of acquittal is denied.

*Motion for a New Trial*

The Defendant petitions, in the alternative, for a new trial. This motion for a new trial is based on three grounds. First, the Defendant asserts that the Court should not have allowed the jury to hear any admission regarding the possession of the same Glock firearm on a previous occasion and that the failure to exclude this evidence violated Federal Rules of Evidence 403.

The Defendant was previously convicted, in a state court proceeding, of possessing the Glock firearm at issue in this case. Prior to trial, the Defendant filed a motion in limine to bar the introduction of any part of the transcript of his prior plea of guilty for possession. The Court granted that motion. The Defendant asserts that Federal Rule of Evidence 403 was violated.

The Court ruled, however, it was proper for the Government to present the Defendant's statement that he possessed the gun on January 1, 2005, as that statement was not hearsay but, rather, was an admission, governed by Federal Rule of Evidence 801(d)(2). That rule provides, in relevant part, that "[a] statement is not hearsay if . . . . [t]he statement is offered against a party and is the party's own statement." As a result, the jury was allowed to know that Dabney, while represented by an attorney, made a statement under oath in which he admitted to the possession of the firearm that was the subject of the federal indictment. However, to obviate any possible unfair prejudice, the Court did not permit any evidence that the admission was part of a guilty plea by the Defendant in state court. The Court did not abuse its discretion in allowing the Defendant's statement that he had previously possessed the weapon in question.

Second, the Defendant asserts that the Court should have allowed the Defendant, through his attorney, to review the Chicago Police Department's internal investigation records pertaining to Officers Wallace and Coleman. The Defendant asserts that he was potentially prevented from finding material in the internal investigation records that would aid in impeachment of these officers because the Court allowed only the Office of the U.S. Attorney to review those records and decide which records the Defendant would be allowed to see. The Defendant asserts that, at a minimum, the Court should have conducted an *in camera* review of these records.

5

The Supreme Court has held that a defendant in a federal criminal case has no constitutional right to engage in discovery. *Weatherford v. Bursey*, 429 U.S. 545 (1977); *Wardius v. Oregon*, 412 U.S. 470 (1973). Rather, the rights of a defendant to disclosure in a federal criminal case are clearly set forth in Rule 16 of the Federal Rules of Criminal Procedure and in the Jenks Act, Title 18, United States Code, Section 3500.

Rule 16(a)(1) provides that the government, upon request, must provide: (1) the defendant's statements; (2) the defendant's prior criminal record, (3) documents and tangible objects which are within the government's possession, custody or control and which are material to the preparation of the defense or are intended for use by the government as evidence in its case-in-chief; (4) reports of examinations and tests; and (5) the identity of government experts.

Rule 17(c) of the Federal Rules of Criminal Procedure, which governs the issuance of trial subpoenas for the production of documentary evidence and objects, provides, in pertinent part:

> A subpoena may also order a witness to produce any books, papers documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. Pro. 17(c). Rule 17(c) subpoenas are not intended to provide a means of discovery for criminal cases. *United States v. Nixon*, 418 U.S. 683 (1974); *Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951).

Further, under *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (*Brady*), the prosecution is required to produce evidence favorable to an accused upon request. Undisclosed evidence is

6

material under *Brady* "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). A "reasonable probability" of a different result is shown "when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.' " *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

With respect to the internal investigation records, the Court enforced the Defendant's subpoena and, when the Chicago Police Department produced the records, directed the Government to inspect the documents that had not been previously produced to the Defendant to determine whether any of the files were discoverable by Rule, the Jenks Act or *Brady*. The Government reported that it inspected the more than thirty files and so identified two or three files and presented those files for the Defendant's attorney to inspect. The Court later denied the Defendant's request to cross-examine the officers by using the content of those files based on the rules of evidence. Hence, even where the defendant inspected the files, no admissible evidence was produced to impeach the officers or otherwise. Nor does the Defendant offer any evidence or information to suggest that allowing the Defendant full access to all of the files would have produced impeachment material. Accordingly, this Court did not abuse its discretion in this regard.

The third reason the Defendant is asking for a new trial is that the Defendant alleges the ATF Special Agent Jeffery Marshall did not have the qualifications to testify as an expert witness on the interstate transportation of weapons. Before rendering his opinion on whether the gun traveled in interstate or foreign commerce, Special Agent Marshall testified to his level of skill,

experience, training and education to determine the origin of firearms. The Defendant contends that Special Agent Marshall did not meet the qualifications of Rule 702 to testify as an expert and that, by allowing him to testify as an expert, the Defendant was prejudiced.

This Court's decision to admit Special Agent Marshall's testimony was a matter of discretion. *United States v. Cruz-Velasco*, 224 F.3d 654, 660 (7th Cir. 2000) (*Cruz-Velasco*). Rule 702 of the Federal Rules of Evidence provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to determine a fact in issue," an expert "may testify thereto." Fed.R.Evid. 702. In applying Rule 702, this Court "serves a gatekeeping function and must ensure that the expert testimony at issue 'both rests on a reliable foundation and is relevant to the task at hand'." *Cruz-Velasco*, 224 F.3d at 660, citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).

The proper foundation with respect to Special Agent Marshall's qualifications was presented before an expert opinion was permitted to be elicited. The Court properly considered Special Agent Marshall's qualifications in allowing his expert testimony.

## CONCLUSION

Defendant Dabney's Motion for Judgment of Acquittal or, Alternatively, for a New Trial Pursuant to Federal Criminal Procedure Rules 29 and 33 are denied.

Date: January 3, 2006

JOHN W. DARRAH
United States District Court Judge